[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR MODIFICATION DATED DECEMBER 1, 2000 (#136)
CT Page 1514
The defendant seeks to modify the amount of alimony he is presently ordered to pay his former wife on the basis of an involuntary termination of his employment. The court heard testimony and received documentary evidence on August 24, 2001 and October 12, 2001. The following procedural history is relevant to the court's decision.
The parties married on November 18, 1967. On July 7, 1998 the court (Dranginis, J.) dissolved the marriage and incorporated the parties Separation Agreement dated July 1, 1998 into the judgment. The issue before the court is the following provisions relating to alimony.
". . . (A)fter the closing on 58 Wright Drive, Avon, the deductible periodic alimony shall increase to two thousand six hundred dollars ($2,600) per month, payable one thousand three hundred dollars ($1,300) on the first and sixteenth of the month. This alimony shall be paid until Husband dies, Wife dies, wife remarries or cohabits . . ."
". . . (T)his alimony payment shall be non-modifiable, except if Husband, due to illness, injury or involuntary (emphasis added) loss of license is unable to perform the main duties of his occupation . . ."
On February 7, 2001 the parties filed with the court a Stipulation concerning alimony arrearages and a schedule and further agreed to continue the motion for modification to the first week in April, 2001. On April 6, 2001 the parties again filed with the court a similar stipulation and again continued the motion for modification to June 20, 2001. On June 20, 2001 the court (Gruendel, J.) continued the motion to July, 24, 2001 with orders retroactive to June 20, 2001.
The court, having reviewed the testimony of the parties, the exhibits and the plaintiff's post trial brief (the defendant having failed to file one) makes the following findings of fact.
For many years the defendant has been engaged as a financial advisor. He has been self employed but has been affiliated with a broker/dealer. He traded investment products on behalf of his clients and also sold insurance products. He held various licenses but at all times relevant his biggest source of income came from Mass. Mutual. He worked on commissions. He was very conversant with the SEC and NASD regulations. In the latter part of 2000 he traded some of his clients' portfolios because of a rapidly declining market and put his clients in safer investments. He did not have the clients' permission to make the trades and, as a result, he lost his license for 9 months. His license was reinstated on July 1, 2001. CT Page 1515
As a result of his loss of license Mass. Mutual terminated the defendant. He has suffered an economic loss as a result of his loss of license. Although he was well intentioned on helping his clients avert losses he knew that his actions were in violation of Federal Regulations pertaining to the securities industry. There was ample evidence in the file and from the testimony of the plaintiff that she had and continues to have significant physical and emotional problems She makes $90 gross per week and needs her alimony payments to survive. She should not suffer as a result of the defendants' intentional acts, regardless of how well motivated he was.
The motion for modification is denied.
BY THE COURT
_________________________ John R. Caruso, J.